IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| NOKIA OF AMERICA CORPORATION, AT&T SERVICES, INC., AT&T MOBILITY LLC, AT&T MOBILITY II LLC, T-MOBILE USA, INC., SPRINT, LLC F/K/A SPRINT CORP., AND CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, | |
| **Plaintiffs,** | Civil Action No. 25-cv-1106-MN |
| **v.** | |
| **ACER INC.,** | JURY TRIAL DEMANDED |
| **Defendant.** | |

## AMENDED COMPLAINT

Plaintiffs Nokia of America Corporation ("Nokia America"), AT&T Services, Inc., AT&T Mobility LLC, and AT&T Mobility II LLC (collectively, "AT&T"), T-Mobile USA, Inc. and Sprint, LLC f/k/a Sprint Corp. (collectively, "T-Mobile"), and Cellco Partnership d/b/a Verizon Wireless ("Verizon") (Nokia America, AT&T, T-Mobile, and Verizon together, "Plaintiffs") file this Amended Complaint against Acer Inc. ("Acer" or "Defendant") seeking declaratory judgment that certain products do not infringe any of the following patents owned by Acer: U.S. Patent No. 11,252,641; U.S. Patent No. 11,044,053; U.S. Patent No. 10,237,791; U.S. Patent No. 9,999,097; U.S. Patent No. 8,737,333; and U.S. Patent No. 9,526,048, and that Nokia and its products do not infringe any of the following patents owned by Acer: U.S. Patent No. 9,807,746; U.S. Patent No. 8,798,663; U.S. Patent No. 8,787,304; and U.S. Patent No. 7,797,615 (collectively, "Patents-at-Issue"). Nokia also seeks declaratory judgment that Acer has breached its obligation to negotiate in good faith toward a license to the claims of Acer's patents allegedly essential to the 4G LTE-A and 5G standards.

1

## NATURE OF THE ACTION

1.      Plaintiffs bring this action in view of Acer's assertion that it owns patents containing claims allegedly essential to the 4G LTE-A and 5G standards—including the Patents-at-Issue—and because Acer has sent several threatening letters to Nokia America's customers, AT&T, T-Mobile, and Verizon, predicated on their use of Nokia America's 4G and 5G base station equipment. Nokia further brings this action because Acer has failed to negotiate in good faith.

2.      Acer's conduct has created a definite and concrete dispute as to (i) the non-infringement of the Patents-at-Issue; and (ii) whether Acer has breached its duty to negotiate in good faith toward a license to the claims of its patents that it alleges are essential. Plaintiffs therefore bring the declaratory judgment claims set forth below.

3.      Nokia America and/or its affiliates (collectively, "Nokia") and Acer have been engaged in certain licensing discussions since at least 2018. For more than seven years, Nokia has tried to negotiate a license with Acer to Nokia's H.264 and H.265 patents. Acer's continued refusal to take a license to Nokia's H.264 and H.265 patents forced Nokia to institute proceedings against Acer in April 2025. A few months later, on July 10, 2025, Acer retaliated by sending several threatening letters to Nokia America's customers AT&T, T-Mobile, and Verizon (collectively, "Nokia's Customers"). Acer accused Nokia's Customers of infringing Acer's 4G LTE-A and 5G patents, which include claims that are allegedly essential "for base transceiver station equipment"—that is, Nokia's equipment. Acer's letters made clear that Acer intended to take action against Plaintiffs' products, including Nokia base station equipment, creating an imminent threat of a patent infringement suit by Acer against Plaintiffs.

4.      Indeed, on January 9, 2026—four months after the instant case was filed—Acer filed patent infringement suits in the Eastern District of Texas against AT&T, T-Mobile, and

Verizon, asserting six of the Patents-at-Issue. *See* Case Nos. 2:26-cv-00025 (E.D. Tex.), 2:26-cv-00026 (E.D. Tex.), and 2:26-cv-00027 (E.D. Tex.).

5.     In those cases, Acer asserts that AT&T, T-Mobile, and Verizon each "operates and sells access to a mobile network that provides telecommunication, Internet, and other services to customers via cellular base stations located in this district and throughout the United States," and that the "mobile network infrastructure relies on using technology and equipment, including said cellular base stations (collectively 'Accused Instrumentalities') in a manner that infringes [U.S. Patent No. 11,252,641; U.S. Patent No. 11,044,053; U.S. Patent No. 10,237,791; U.S. Patent No. 9,999,097; U.S. Patent No. 8,737,333; and U.S. Patent No. 9,526,048 ('the Asserted Patents')] by operating in accordance with 3GPP 4G/LTE and 5G Standards, including Releases 8–15." Case Nos. 2:26-cv-00025 at D.I. 1, ¶ 39 (E.D. Tex.), 2:26-cv-00026 at D.I. 1, ¶ 36 (E.D. Tex.), and 2:26-cv-00027, at D.I. 1, ¶ 35 (E.D. Tex.). Acer alleges that the "Accused Instrumentalities infringe the Asserted Patents by communicating with and/or using customers' mobile devices (also referred to as 'terminals' or 'user equipment'), such as mobile phones, smartphones, tablets, and mobile hotspots, in accordance with 4G/LTE and/or 5G mobile network standards." Case Nos. 2:26-cv-00025 at D.I. 1, ¶ 40 (E.D. Tex.), 2:26-cv-00026 at D.I. 1, ¶ 37 (E.D. Tex.), and 2:26-cv-00027, at D.I. 1, ¶ 36 (E.D. Tex.).

## PARTIES

6.     Nokia America is a Delaware Corporation with a principal place of business at 600 Mountain Avenue, Murray Hill, New Jersey 07974.

7.     AT&T Services, Inc. is a Delaware corporation with a principal place of business at 208 S. Akard Street, Dallas, Texas 75202.

8.     AT&T Mobility LLC is a Delaware limited liability company with a principal place of business at 1025 Lenox Park Boulevard NE, Atlanta, Georgia 30319.

9.      AT&T Mobility II LLC is a Delaware limited liability company with a principal place of business at 1025 Lenox Park Boulevard NE, Atlanta, Georgia 30319.

10.      T-Mobile USA, Inc. is a Delaware corporation with a principal place of business at 12920 Southeast 38th Street, Bellevue, Washington 98006.

11.      Sprint LLC f/k/a Sprint Corp. is a Delaware limited liability company with a principal place of business at 12920 Southeast 38th Street, Bellevue, Washington 98006.

12.      Cellco Partnership d/b/a Verizon Wireless is a Delaware corporation with a principal place of business at One Verizon Way Basking Ridge, New Jersey 07920.

13.      On information and belief, Acer is a corporation organized under the laws of Taiwan, with a principal place of business at 8F, 88, Sec. 1, Xintai 5th Rd. Xizhi, New Taipei City 221, Taiwan.

## JURISDICTION AND VENUE

14.      This Court has subject matter jurisdiction based on 28 U.S.C. §§ 1331, 1332, 1338(a), and 2201(a).

15.      This Court may declare the rights and other legal relations of the parties pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., because this case presents an actual controversy within the Court's jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). An actual controversy exists within the Court's jurisdiction because Acer has made allegations against 4G and 5G base station equipment that Nokia provides to AT&T, T-Mobile, and Verizon and allegations against AT&T's, T-Mobile's, and Verizon's 4G and 5G networks.

16.      Additionally, the amount in controversy is over $75,000, and diversity jurisdiction exists because Acer is a citizen of the country of Taiwan.

17.      The Court has personal jurisdiction over Acer because Acer has purposefully directed its activities to Delaware. Acer regularly conducts business in Delaware and purposefully

avails itself of the privileges of conducting business in Delaware. In particular, on information and belief, Acer makes, uses, imports, offers for sale, sells, and/or advertises its products and affiliated services in Delaware.

18.      On information and belief, on July 10, 2025, Acer sent letters to Nokia's Customers targeting Nokia's products sold in this District. Accordingly, this Court has personal jurisdiction over Acer because the causes of action alleged herein arise from Acer's actions directed to Delaware, including Acer's demands in connection with the Patents-at-Issue and its threats to enforce its 4G LTE-A and 5G patents against Nokia's equipment.

19.      Acer alleged that AT&T, T-Mobile, and Verizon have infringed Acer's 4G LTE-A and 5G patents.

20.      Acer's letters alleged infringement because its 4G LTE-A and 5G patents include claims that are essential "for base transceiver station equipment"—that is, Nokia's equipment.

21.      Nokia America is a corporation organized under the laws of the State of Delaware.

22.      Venue is proper under 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b). Acer does not reside in the United States, and thus venue is appropriate in this District under 28 U.S.C. § 1391(c)(3).

## I.      FACTUAL BACKGROUND

### A.      Nokia's Failed Negotiations with Acer

23.      Nokia is a multinational data networking and telecommunications equipment company. Nokia has consistently been one of the major contributors to wireless communication, audio, and video standards and technologies that enable many features that are commonplace and expected of today's consumer electronics.

24.      Nokia holds an extensive portfolio of H.264- and H.265-related patents. Nokia has invested billions of dollars into researching mobile communications and video coding technologies

and currently owns more than 20,000 patent families worldwide. Nokia protects its investments in research and development with intellectual property.

25.     Acer has sold millions of products which infringe Nokia's H.264- and H.265-related patents but has paid no royalties. Since 2018, Nokia has been negotiating with Acer in a good faith effort to license Nokia's H.264- and H.265-related patents.

26.     Over the course of the parties' negotiations, Nokia has provided Acer with technical presentations, claim charts, patents lists, and anonymized lists of Nokia's licensees. The parties had numerous in-person, telephonic, and video meetings. Nokia made Acer multiple RAND-compliant offers for Acer's infringement of H.264- and H.265-related patents. Nokia has twice offered to voluntarily arbitrate the parties' licensing dispute, and both times Acer has rejected this request.

27.     On more than one occasion, Nokia has stated that it is open to a cross-license with Acer, including on April 2, 2025, and May 17, 2025.

28.     Unfortunately, throughout the parties' negotiation, Acer failed to reciprocate Nokia's good faith effort. Instead, Acer continued its unauthorized use of Nokia's patents, has not paid a single royalty for its infringement of Nokia's H.264- and H.265-related patents, and more recently has made unreasonable demands with respect to its own patent portfolio.

29.     As a result, Nokia initiated proceedings before the International Trade Commission, the Western District of Texas, Brazil, Germany, and the UPC.[1] Acer similarly filed its own

---

[1] *See In the Matter of Certain Video-Capable Laptop, Desktop Computers, Handheld Computers, Tablets, Televisions, Projectors, and Components and Modules Thereof*, Inv. No. 337-TA-1448 (Apr. 11, 2025); *Nokia Techs. Oy v. Acer Inc.*, No. 1:25-cv-523 (W.D. Tex. Apr. 7, 2025); *Nokia Techs. Oy v Acer Inc. et al.*, Unified Patent Court, Local Division Munich, Case No. ACT_15096/2025, UPC_CFI_293/2025; *Nokia Techs. Oy v Acer Inc. et al.*, Regional Court Munich I, Case No. 7 O 4100/25; *Nokia Techs. Oy v. AGP Tecnologia em Informatica do Brasil Ltda.*, Lawsuit #0853505-88.2025.8.19.0001.

litigation implicating Nokia's patents in the United Kingdom and Brazil.[2] These actions are still ongoing.

**B.    Acer Sends Threat Letters to Nokia's Customers**

30.    Based on Acer's failure to negotiate with Nokia in good faith, Nokia initiated proceedings against Acer regarding Nokia's H.264- and H.265-related patents in early April 2025. A few months later, on July 10, 2025, Nokia's Customers received letters sent on behalf of Acer (the "Threat Letters").

31.    These Threat Letters were sent by a law firm, retained by Acer, to "assist with [Acer's] patent portfolio licensing program" to offer Nokia's Customers "a license to Acer's 4G LTE-A and 5G worldwide standard essential patents for base transceiver station equipment."

32.    The Threat Letters purported to bring "attention" to a number of "Acer's 4G LTE-A and 5G standard essential patent[s]" that Nokia's Customers allegedly infringe, including U.S. Patent No. 11,252,641; U.S. Patent No. 11,044,053; U.S. Patent No. 10,237,791; U.S. Patent No. 9,999,097; and U.S. Patent No. 8,737,333.

33.    Acer claimed that these patents were examples of Nokia's Customers' "infringement of Acer's 4G LTE-A and 5G standard essential patents for base transceiver station equipment."

34.    Acer's Threat Letters explain that Acer's theory of infringement is predicated on infringement by "base transceiver station equipment." Nokia makes base transceiver station equipment and sells it to Nokia's Customers, including AT&T, T-Mobile, and Verizon.

35.    Nokia base transceiver station equipment supports the 4G LTE-A and 5G standards.

---

[2] *Acer Inc. and Acer UK Ltd v. Nokia Corp. and Nokia Techs. Oy*, Case HP-2025-000030.

36.    Acer's Threat Letters continued that "[p]ursuant to Acer's requirements as a member of the European Telecommunications Standards Institute (ETSI), the licensing proposal will be made on a fair, reasonable and non-discriminatory (FRAND) basis."

37.    The Threat Letters set a 21-day deadline for Nokia's Customers to send their availability for a meeting with Acer. The Threat Letters warned that "[f]ailure to respond to this letter will result in a claim of willful infringement based upon [Nokia's Customers'] knowing and intentional infringement of Acer's rights." The Threat Letters cautioned that, absent Nokia's Customers "obtaining a license to Acer's 4G LTE-A and 5G SEP portfolio for base transceiver station equipment," "Acer will aggressively pursue all legal remedies and damages available under the law."

38.    Nokia's Customers each provided notice of the Threat Letters to Nokia pursuant to contractual indemnification provisions.

39.    Following receipt of the Threat Letters, Nokia participated in at least one meeting between Acer and one of Nokia's Customers. During that meeting, Acer presented claim charts for five patents alleging infringement based on compliance with the applicable 4G LTE-A and 5G standards. These claim charts were presented as exemplary of the alleged "SEPs" in Acer's portfolio for which a license was required.

40.    In that meeting, Acer presented a licensing model setting forth Acer's position regarding the value of its "SEP" portfolio that was based entirely on Nokia's revenue from the sale of Nokia base station equipment.

C.    ETSI, the ETSI IPR Policy, and the FRAND Commitment

41.    The European Telecommunications Standards Institute ("ETSI") is a standard development organization ("SDO") that promulgates globally accepted standards for the telecommunications industry. ETSI has more than 900 members from more than 60 countries. In 1998,

ETSI and other SDOs founded and became organizational partners of the Third Generation Partnership Project ("3GPP"). 3GPP created the technical specifications for 3G, 4G, and 5G.

42.    Frequently, ETSI members own patents and patent applications that include claims that may be essential to technical specifications promulgated by 3GPP. ETSI has developed an Intellectual Property Rights ("IPR") Policy regarding the licensing of intellectual property rights in those patents and patent applications. The IPR Policy is governed by the laws of France.

43.    Clause 6.1 of the ETSI IPR Policy states: "When an ESSENTIAL IPR relating to a particular STANDARD or TECHNICAL SPECIFICATION is brought to the attention of ETSI, the Director-General of ETSI shall immediately request the owner to give within three months an irrevocable undertaking in writing that it is prepared to grant irrevocable licences on fair, reasonable and non-discriminatory ('FRAND') terms and conditions under such IPR[.]"

44.    Section 15.4 of the ETSI IPR Policy defines the term "EQUIPMENT" as "any system, or device fully conforming to a STANDARD."

45.    Section 15.6 of the ETSI IPR Policy defines the term "ESSENTIAL" to mean that "it is not possible on technical (but not commercial) grounds, taking into account normal technical practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR."

46.    ETSI requests that patent holders publicly declare their licensing positions with respect to essential claims of patents and patent applications by submitting an IPR Information Statement and Licensing Declaration. A form Declaration is attached to the IPR Policy, and is contractual in nature.

47.     On information and belief, Acer has submitted one or more IPR Information Statement and Licensing Declarations identifying patents that Acer views as potentially including

claims that are essential to one or more of the 3G, 4G, and 5G standards. These declarations state: "the Declarant and/or its AFFILIATES are (1) prepared to grant irrevocable licenses under this/these IPR(s) on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy; and (2) will comply with Clause 6.1bis of the ETSI IPR Policy."

48.    Clause 6.1bis of the ETSI IPR Policy states that "FRAND licensing undertakings made pursuant to Clause 6 shall be interpreted as encumbrances that bind all successors-in-interest," and "any Declarant who has submitted a FRAND undertaking according to the POLICY who transfers ownership of ESSENTIAL IPR that is subject to such undertaking shall include appropriate provisions in the relevant transfer documents to ensure that the undertaking is binding on the transferee and that the transferee will similarly include appropriate provisions in the event of future transfers with the goal of binding all successors-in-interest. The undertaking shall be interpreted as binding on successors-in-interest regardless of whether such provisions are included in the relevant transfer documents."

49.    Clause 6.1 of the ETSI IPR Policy further states that the FRAND undertaking "may be made subject to the condition that those who seek licenses agree to reciprocate." The reciprocity principal is a condition where the patent holder agrees to be prepared to grant licenses to its essential patent claims on FRAND terms in accordance with the IPR Policy, provided that the licensee agrees to reciprocate by being prepared to grant licenses to its own essential patent claims on FRAND terms to the patent holder in accordance with the IPR Policy. This ensures mutual exchanges of essential patent rights, fostering a balanced and cooperative environment among members of ETSI.

50.    Nokia is a third-party beneficiary of Acer's FRAND commitments.

## II.    PATENTS-AT-ISSUE

### A.    U.S. Patent No. 11,252,641 ("the '641 Patent")

51.    Upon information and belief, Acer is the owner of the right, title, and interest in and to the '641 Patent entitled "Method of system information transmission and acquisition" issued on February 15, 2022, to inventors Ching-Wen Cheng and Hung-Chen Chen (*see* Exhibit 7). The '641 Patent issued from U.S. Patent Application No. 15/885,723, filed on January 31, 2018.

52.    Upon information and belief, on June 29, 2023, Acer submitted an IPR Information Statement and Licensing Declaration to ETSI that the '641 Patent includes claims that are or may become essential to the 5G standard being promulgated by 3GPP including at least 3GPP TS 138.300, TS 138.212, TS 138.213, TS 138.331, TS 38.212, TS 38.213, TS 38.300, and TS 38.331 (Release 15) (*see* Exhibit 1).

### B.    U.S. Patent No. 11,044,053 ("the '053 Patent")

53.    Upon information and belief, Acer is the owner of the right, title, and interest in and to the '053 Patent entitled "Device and method of handling code block group-based communication operation" issued on June 22, 2021, to inventors Chia-Wen Hsieh and Chien-Min Lee (*see* Exhibit 8). The '053 Patent issued from U.S. Patent Application No. 16/009,224, filed on June 15, 2018.

54.    Upon information and belief, on June 29, 2023, Acer submitted an IPR Information Statement and Licensing Declaration to ETSI that the claims of the '053 Patent are or may become essential to the 5G standard promulgated by 3GPP including at least 3GPP TS 138.331, TS 138.212, TS 138.213, TS 138.214, TS 38.331, TS 38.212, TS 38.213, and TS 38.214 (Releases 15 and 16) (*see* Exhibit 1).

### C.    U.S. Patent No. 10,237,791 ("the '791 Patent")

55.    Upon information and belief, Acer is the owner of the right, title, and interest in and to the '791 Patent entitled "Method of updating network detection and selection information and traffic routing information" issued on March 19, 2019, to inventors Wei-Chen Pao and Ching-Wen Cheng (*see* Exhibit 9). The '791 Patent issued from U.S. Patent Application No. 14/669,005, filed on March 26, 2015.

56.    Upon information and belief, on March 29, 2021, Acer submitted an IPR Information Statement and Licensing Declaration to ETSI that the '791 Patent contains claims that are or may become essential to the 4G standard promulgated by 3GPP including at least 3GPP TS 36.331 (*see* Exhibit 2).

### D.    U.S. Patent No. 9,999,097 ("the '097 Patent")

57.    Upon information and belief, Acer is the owner of the right, title, and interest in and to the '097 Patent entitled "Method of radio bearer establishment in dual connectivity" issued on June 12, 2018, to inventors Wei-Chen Pao and Chun-Chia Chen (*see* Exhibit 10). The '097 Patent issued from U.S. Patent Application No. 15/709,492, filed on September 20, 2017.

58.    Upon information and belief, on March 29, 2021, Acer submitted an IPR Information Statement and Licensing Declaration to the European Telecommunications Standards Institute that the claims of the '097 Patent are or may become essential to the 4G standard promulgated by 3GPP including at least 3GPP TS 36.300, TS 36.331, and TS 36.423 (*see* Exhibit 2).

### E.    U.S. Patent No. 8,737,333 ("the '333 Patent")

59.    Upon information and belief, Acer is the owner of the right, title, and interest in and to the '333 Patent entitled "Method of power reporting and communication device thereof"

issued on May 27, 2014, to inventors Chun-Chia Chen and Chun-Yen Wang (*see* Exhibit 11). The '333 Patent issued from U.S. Patent Application No. 61/411,192, filed on November 8, 2010.

60.    Upon information and belief, on April 27, 2016, Acer submitted an IPR Information Statement and Licensing Declaration to ETSI that the claims of the '333 Patent are or may become essential to the 4G standard promulgated by 3GPP including at least 3GPP TS 36.321 and TS 36.101 (Release 12) (*see* Exhibit 3).

61.    In July 2025, Acer filed a lawsuit against Paccar, Inc., alleging infringement of the '333 Patent. *Acer Inc. v. Paccar, Inc.*, Case No. 2:25-cv-00740 ("Paccar Litigation"). In that case, Acer also alleged that the claims of the '333 Patent are essential to at least the 4G standard.

**F.    U.S. Patent No. 9,807,746 ("the '746 Patent")**

62.    Upon information and belief, Acer is the owner of the right, title, and interest in and to the '746 Patent entitled "Method of handling hybrid automatic repeat request feedback and related communication device" issued on October 31, 2017, to inventor Chien-Min Lee (*see* Exhibit 12). The '746 Patent issued from U.S. Patent Application No. 13/802,832, filed on March 14, 2013.

63.    Upon information and belief, on February 17, 2020, Acer submitted an IPR Information Statement and Licensing Declaration to ETSI that the claims of the '746 Patent are or may become essential to the 4G standard promulgated by 3GPP including at least 3GPP TS 36.213 and TS 36.300 (Release 11) (*see* Exhibit 4).

**G.    U.S. Patent No. 8,798,663 ("the '663 Patent")**

64.    Upon information and belief, Acer is the owner of the right, title, and interest in and to the '663 Patent entitled "Method of performing power headroom reporting and communication device thereof" issued on August 5, 2014, to inventors Chun-Yen Wang, Shiang-

Jiun Lin, Tzu-Ming Lin, and Chun-Chia Chen (*see* Exhibit 13). The '663 Patent issued from U.S. Patent Application No. 13/235,525, filed on September 19, 2011.

65.    Upon information and belief, on February 18, 2020, Acer submitted an IPR Information Statement and Licensing Declaration to ETSI that the claims of the '663 Patent are or may become essential to the 4G standard promulgated by 3GPP including at least 3GPP TS 36.300 and TS 36.321 (Release 10) (*see* Exhibit 5).

66.    In 2021, Acer filed a lawsuit against Volkswagen AG and Volkswagen Group of America, Inc., alleging infringement of the '663 Patent. *Acer Inc. v. Volkswagen AG and Volkswagen Grp. of Am., Inc.*, Case No. 1:21-cv-01390 ("Volkswagen Litigation"). In that case, Acer alleged that the claims of the '663 Patent are essential to at least the 4G standard.

**H.    U.S. Patent No. 8,787,304 ("the '304 Patent")**

67.    Upon information and belief, Acer is the owner of the right, title, and interest in and to the '304 Patent entitled "Method for reference signal pattern allocation and related communication device" issued on July 22, 2014, to inventors Yan-Xiu Zheng and Chung-Lien Ho (*see* Exhibit 14). The '304 Patent issued from U.S. Patent Application No. 13/163,735, filed on June 20, 2011.

68.    Upon information and belief, on April 27, 2016, Acer submitted an IPR Information Statement and Licensing Declaration to ETSI that the claims of the '304 Patent are or may become essential to the 4G standard promulgated by 3GPP including at least 3GPP TS 36.311 (Release 10) (*see* Exhibit 3).

69.    The '304 Patent was asserted in the Volkswagen Litigation, and Acer alleged that the claims of the '304 Patent are essential to at least the 4G standard.

70.    The '304 Patent was also asserted in the Paccar Litigation, and Acer again alleged that the claims of the '304 Patent are essential to at least the 4G standard.

### I.    U.S. Patent No. 7,797,615 ("the '615 Patent")

71.    Upon information and belief, Acer is the owner of the right, title, and interest in and to the '615 Patent entitled "Utilizing variable-length inputs in an inter-sequence permutation turbo code system" issued on September 14, 2010, to inventor Yan-Xiu Zheng (*see* Exhibit 15). The '615 Patent issued from U.S. Patent Application No. 11/513,158, filed on August 31, 2006.

72.    Upon information and belief, on July 3, 2014, Acer submitted an IPR Information Statement and Licensing Declaration to ETSI that the claims of the '615 Patent are or may become essential to the 4G standard being promulgated by 3GPP including at least 3GPP TS 36.212 (Release 8) (*see* Exhibit 6).

### J.    U.S. Patent No. 9,526,048 ("the '048 Patent")

73.    Upon information and belief, Acer is the owner of the right, title, and interest in and to the '048 Patent entitled "Method of handling measurement gap configuration and communication device thereof" issued on December 20, 2016, to inventors Shiang-Jiun Lin and Chun-Yen Wang (*see* Exhibit 16). The '048 Patent issued from U.S. Patent Application No. 13/099,347, filed on May 2, 2011.

74.    Upon information and belief, on October 22, 2025, Acer submitted an IPR Information Statement and Licensing Declaration to ETSI that the '048 Patent includes claims that are or may become essential to the 5G standard being promulgated by 3GPP including at least 3GPP TS 38.300, TS 38.331, and TS 36.101 (Release 15) (*see* Exhibit 17).

### <u>COUNT I: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '641 PATENT</u>

75.    Plaintiffs repeat and allege each and every allegation contained in paragraphs 1-74 above as if fully set forth herein.

76.    On information and belief, Acer contends that the claims of the '641 Patent are essential to the 4G LTE-A standard.

77.    On information and belief, Acer contends that the claims of the '641 Patent are essential to the 5G standard.

78.    Plaintiffs make, sell, and/or operate equipment and/or services which support the 4G LTE-A and 5G standards.

79.    On information and belief, Acer believes Nokia 4G LTE-A and 5G base station equipment is covered by the '641 Patent.

80.    On information and belief, Acer believes AT&T's Accused Instrumentalities are covered by the '641 Patent.

81.    On information and belief, Acer believes T-Mobile's Accused Instrumentalities are covered by the '641 Patent.

82.    On information and belief, Acer believes that Nokia 4G LTE-A and 5G base station equipment in Verizon's Accused Instrumentalities is covered by the '641 Patent.

83.    On information and belief, Nokia and Nokia base station equipment do not infringe any claim of the '641 Patent. Moreover, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities do not infringe any claim of the '641 Patent. For example, Nokia base station equipment, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities do not practice and are not capable of practicing at least the step of "broadcasting the non-essential minimum SI with dynamically scheduled on a downlink shared channel according to the availability information, such that a mobile device in the wireless communication system is able to obtain the non-essential minimum SI with dynamic

scheduled on the downlink shared channel according to the first scheduling information of the essential minimum SI, to determine whether the cell broadcasts remaining parts of the non-essential minimum SI according to a second scheduling information included in the obtained non-essential minimum SI, and to obtain the remaining parts of the non-essential minimum SI according to the second scheduling information" recited in claim 1.

84.    As another example, Nokia base station equipment, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities do not practice and are not capable of practicing the step of "wherein the availability information is set to a first value for indicating that the cell broadcasts the non-essential minimum SI, and is set to a second value for indicating that the cell does not broadcast the non-essential minimum SI" recited in claim 1.

85.    There is an actual, substantial, and immediate controversy between Plaintiffs and Acer to warrant the issuance of a declaratory judgment.

86.    The interests of the parties will be best served if this Court enters a Declaratory Judgment setting forth the rights of the parties with respect to this dispute.

87.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of any interested party.

88.    Plaintiffs are entitled to a Judicial Declaration and Order that Nokia and its base station equipment, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities have not infringed and do not infringe, either directly or indirectly, literally or under the doctrine of equivalents, any claim of the '641 Patent.

89.     The relief sought by Plaintiffs will resolve the controversy relative to Acer's Asserted Patents as to the respective interests of Plaintiffs and Acer.

## COUNT II: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '053 PATENT

90.     Plaintiffs repeat and allege each and every allegation contained in paragraphs 1-89 above as if fully set forth herein.

91.     On information and belief, Acer contends that the claims of the '053 Patent are essential to the 4G LTE-A standard.

92.     On information and belief, Acer contends that the claims of the '053 Patent are essential to the 5G standard.

93.     Plaintiffs make, sell, and/or operate equipment and/or services which support the 4G LTE-A and 5G standards.

94.     On information and belief, Acer believes Nokia 4G LTE-A and 5G base station equipment is covered by the '053 Patent.

95.     On information and belief, Acer believes AT&T's Accused Instrumentalities are covered by the '053 Patent.

96.     On information and belief, Acer believes T-Mobile's Accused Instrumentalities are covered by the '053 Patent.

97.     On information and belief, Acer believes Nokia 4G LTE-A and 5G base station equipment in Verizon's Accused Instrumentalities is covered by the '053 Patent.

98.     On information and belief, Nokia and Nokia base station equipment do not infringe any claim of the '053 Patent. Moreover, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities do not infringe any claim of the '053 Patent. For example, Nokia base station equipment, AT&T's

Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities are not configured or configurable to "transmit[] an indication configuring at least one CBG-based communication operation to a communication device" as recited in claim 22.

99.    As another example, Nokia base station equipment, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities are not configured or configurable to "transmit[] a maximum limit number of CBGs in a transport block (TB) for the at least one CBG-based communication operation" as recited in claim 22.

100.    As another example, Nokia base station equipment, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities are not configured or configurable to "obtain[] a size of a CBG field according to the maximum limit number of CBGs" as recited in claim 22.

101.    As another example, Nokia base station equipment, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities are not configured or configurable to "transmit[] the CBG field with the size of the CBG field in a first DL control information (DCI) to the communication device, after obtaining the size of the CBG field, wherein the CBG field indicates at least one transmitted CBG" or "perform[] the at least one CBG-based communication operation with the communication device according to the maximum limit number of CBGs and the CBG field" as recited in claim 22.

102.    There is an actual, substantial, and immediate controversy between Plaintiffs and Acer to warrant the issuance of a declaratory judgment.

103.    The interests of the parties will be best served if this Court enters a Declaratory Judgment setting forth the rights of the parties with respect to this dispute.

104.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of any interested party.

105.    Plaintiffs are entitled to a Judicial Declaration and Order that Nokia and its base station equipment, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities have not infringed and do not infringe, either directly or indirectly, literally or under the doctrine of equivalents, any claim of the '053 Patent.

106.    The relief sought by Plaintiffs will resolve the controversy relative to Acer's Asserted Patents as to the respective interests of Plaintiffs and Acer.

## COUNT III: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '791 PATENT

107.    Plaintiffs repeat and allege each and every allegation contained in paragraphs 1-106 above as if fully set forth herein.

108.    On information and belief, Acer contends that the claims of the '791 Patent are essential to the 4G LTE-A standard.

109.    On information and belief, Acer contends that the claims of the '791 Patent are essential to the 5G standard.

110.    Plaintiffs make, sell, and/or operate equipment and/or services which support the 4G LTE-A and 5G standards.

111.    On information and belief, Acer believes Nokia 4G LTE-A and 5G base station equipment is covered by the '791 Patent.

112.    On information and belief, Acer believes AT&T's Accused Instrumentalities are covered by the '791 Patent.

113.    On information and belief, Acer believes T-Mobile's Accused Instrumentalities are covered by the '791 Patent.

114.    On information and belief, Acer believes Nokia 4G LTE-A and 5G base station equipment in Verizon's Accused Instrumentalities is covered by the '791 Patent.

115.    On information and belief, Nokia and Nokia base station equipment do not infringe any claim of the '791 Patent. Moreover, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities do not infringe any claim of the '791 Patent. For example, Nokia base station equipment, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities do not practice and are not capable of practicing the steps of "transmitting a service region change accept message including the network detection and selection information and traffic routing information of the area update procedure, to the communication device, wherein the service region change accept message includes parameters of RAN assistance information/RAN rules" as required by claim 8 or "transmitting a connection reconfiguration message including the network detection and selection information and traffic routing information of the attach procedure, to the communication device, wherein the connection reconfiguration message includes parameters of RAN assistance information/RAN rules" as required by claim 14.

116.    There is an actual, substantial, and immediate controversy between Plaintiffs and Acer to warrant the issuance of a declaratory judgment.

117.    The interests of the parties will be best served if this Court enters a Declaratory Judgment setting forth the rights of the parties with respect to this dispute.

118.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of any interested party.

119.    Plaintiffs are entitled to a Judicial Declaration and Order that Nokia and its base station equipment, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities have not infringed and do not infringe, either directly or indirectly, literally or under the doctrine of equivalents, any claim of the '791 Patent.

120.    The relief sought by Plaintiffs will resolve the controversy relative to Acer's Asserted Patents as to the respective interests of Plaintiffs and Acer.

## COUNT IV: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '097 PATENT

121.    Plaintiffs repeat and allege each and every allegation contained in paragraphs 1-120 above as if fully set forth herein.

122.    On information and belief, Acer contends that the claims of the '097 Patent are essential to the 4G LTE-A standard.

123.    On information and belief, Acer contends that the claims of the '097 Patent are essential to the 5G standard.

124.    Plaintiffs make, sell, and/or operate equipment and/or services which support the 4G LTE-A and 5G standards.

125.    On information and belief, Acer believes Nokia 4G LTE-A and 5G base station equipment is covered by the '097 Patent.

126.    On information and belief, Acer believes AT&T's Accused Instrumentalities are covered by the '097 Patent.

127.    On information and belief, Acer believes T-Mobile's Accused Instrumentalities are covered by the '097 Patent.

128.    On information and belief, Acer believes Nokia 4G LTE-A and 5G base station equipment in Verizon's Accused Instrumentalities is covered by the '097 Patent.

129.    On information and belief, Nokia and Nokia base station equipment do not infringe any claim of the '097 Patent. Moreover, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities do not infringe any claim of the '097 Patent. For example, Nokia base station equipment, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities do not practice and are not capable of practicing the step of "receiving a response message including information about accepting or rejecting establishment or release for the at least a radio bearer on the at least a second base station, from the at least a second base station, wherein the response message includes information of at least one of identities of radio bearers to be accepted or rejected to be established or released, release acknowledgement, information related to configuration of radio bearers on the at least a second base station, and information related to connection setup to the at least a second base station" as required by claims 1 and 8.

130.    As another example, Nokia base station equipment, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities do not practice and are not capable of practicing the step of

"determining whether to establish or release at least a radio bearer for the communication device on at least a second base station" as required by claims 1 and 8.

131.    As another example, Nokia base station equipment, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities do not practice and are not capable of practicing the step of "transmitting a request message including information of the at least a radio bearer to be established or released on the at least a second base station, to the at least a second base station" as required by claims 1 and 8.

132.    There is an actual, substantial, and immediate controversy between Plaintiffs and Acer to warrant the issuance of a declaratory judgment.

133.    The interests of the parties will be best served if this Court enters a Declaratory Judgment setting forth the rights of the parties with respect to this dispute.

134.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of any interested party.

135.    Plaintiffs are entitled to a Judicial Declaration and Order that Nokia and its base station equipment, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities have not infringed and do not infringe, either directly or indirectly, literally or under the doctrine of equivalents, any claim of the '097 Patent.

136.    The relief sought by Plaintiffs will resolve the controversy relative to Acer's Asserted Patents as to the respective interests of Plaintiffs and Acer.

## COUNT V: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '333 PATENT

137.     Plaintiffs repeat and allege each and every allegation contained in paragraphs 1-136 above as if fully set forth herein.

138.     On information and belief, Acer contends that the claims of the '333 Patent are essential to the 4G LTE-A standard.

139.     On information and belief, Acer contends that the claims of the '333 Patent are essential to the 5G standard.

140.     Plaintiffs make, sell, and/or operate equipment and/or services which support the 4G LTE-A and 5G standards.

141.     On information and belief, Acer believes Nokia 4G LTE-A and 5G base station equipment is covered by the '333 Patent.

142.     On information and belief, Acer believes AT&T's Accused Instrumentalities are covered by the '333 Patent.

143.     On information and belief, Acer believes T-Mobile's Accused Instrumentalities are covered by the '333 Patent.

144.     On information and belief, Acer believes Nokia 4G LTE-A and 5G base station equipment in Verizon's Accused Instrumentalities is covered by the '333 Patent.

145.     On information and belief, Nokia and Nokia base station equipment do not infringe any claim of the '333 Patent. Moreover, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities do not infringe any claim of the '333 Patent. For example, Nokia base station equipment, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities are not configured or configurable to

"determin[e] whether to start a maximum output power reporting for the at least a uplink component carrier in the mobile device according to a characteristic associated to the mobile device or the network" or "when the maximum output power reporting is started, [to] determin[e] whether to stop a maximum output power reporting for the at least a uplink component carrier in the mobile device according to a characteristic associated to the mobile device or the network" as required by claims 17 and 21.

146.    There is an actual, substantial, and immediate controversy between Plaintiffs and Acer to warrant the issuance of a declaratory judgment.

147.    The interests of the parties will be best served if this Court enters a Declaratory Judgment setting forth the rights of the parties with respect to this dispute.

148.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of any interested party.

149.    Plaintiffs are entitled to a Judicial Declaration and Order that Nokia and its base station equipment, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities have not infringed and do not infringe, either directly or indirectly, literally or under the doctrine of equivalents, any claim of the '333 Patent.

150.    The relief sought by Plaintiffs will resolve the controversy relative to Acer's Asserted Patents as to the respective interests of Plaintiffs and Acer.

## COUNT VI: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '746 PATENT

151.    Nokia repeats and alleges each and every allegation contained in paragraphs 1-150 above as if fully set forth herein.

152.    On information and belief, Acer contends that the claims of the '746 Patent are essential to the 4G LTE-A standard.

153.    On information and belief, Acer contends that the claims of the '746 Patent are essential to the 5G standard.

154.    Nokia makes and sells base station equipment which supports the 4G LTE-A and 5G standards.

155.    On information and belief, Acer believes Nokia 4G LTE-A and 5G base station equipment is covered by the '746 Patent.

156.    On information and belief, Nokia and Nokia base station equipment do not infringe any claim of the '746 Patent. For example, Nokia and its base station equipment do not practice at least the step of "determining whether the HARQ feedback is scheduled to exist in a physical HARQ indicator channel (PHICH) in a DL control region of the subframe according to the first UL/DL configuration of a first communication device in the wireless communication system and the second UL/DL configuration of a second communication device in the wireless communication system, wherein the first UL/DL configuration and the second UL/DL configuration are different" recited in claim 9.

157.    As another example, Nokia and its base station equipment do not practice at least the step of "arranging the HARQ feedback in the PHICH of the subframe, if the HARQ feedback is scheduled to exist in the PHICH" recited in claim 9.

158.    As another example, Nokia and its base station equipment do not practice at least the step of "arranging DL control information (DCI) in a physical DL control channel (PDCCH) in the DL control region according to the HARQ feedback, if the HARQ feedback is not scheduled to exist in the PHICH" recited in claim 9.

159.    There is an actual, substantial, and immediate controversy between Nokia and Acer to warrant the issuance of a declaratory judgment.

160.    The interests of the parties will be best served if this Court enters a Declaratory Judgment setting forth the rights of the parties with respect to this dispute.

161.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of any interested party.

162.    Nokia is entitled to a Judicial Declaration and Order that Nokia and its base station equipment have not infringed and do not infringe, either directly or indirectly, literally or under the doctrine of equivalents, any claim of the '746 Patent.

163.    The relief sought by Nokia will resolve the controversy relative to Acer's Patents-at-Issue as to the respective interests of Nokia and Acer.

## COUNT VII: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '663 PATENT

164.    Nokia repeats and alleges each and every allegation contained in paragraphs 1-163 above as if fully set forth herein.

165.    On information and belief, Acer contends that the claims of the '663 Patent are essential to the 4G LTE-A standard.

166.    On information and belief, Acer contends that the claims of the '663 Patent are essential to the 5G standard.

167.    Nokia makes and sells base station equipment which supports the 4G LTE-A and 5G standards.

168.    On information and belief, Acer believes Nokia 4G LTE-A and 5G base station equipment is covered by the '663 Patent.

169.    On information and belief, Nokia and Nokia base station equipment do not infringe any claim of the '663 Patent. For example, Nokia and its base station equipment do not practice at least the step of "transmitting mapping information between the power amplifier and the uplink component carriers with a message for component carrier configuration, to the communication device" recited in claims 9 and 19.

170.    There is an actual, substantial, and immediate controversy between Nokia and Acer to warrant the issuance of a declaratory judgment.

171.    The interests of the parties will be best served if this Court enters a Declaratory Judgment setting forth the rights of the parties with respect to this dispute.

172.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of any interested party.

173.    Nokia is entitled to a Judicial Declaration and Order that Nokia and its base station equipment have not infringed and do not infringe, either directly or indirectly, literally or under the doctrine of equivalents, any claim of the '663 Patent.

174.    The relief sought by Nokia will resolve the controversy relative to Acer's Patents-at-Issue as to the respective interests of Nokia and Acer.

## COUNT VIII: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '304 PATENT

175.    Nokia repeats and alleges each and every allegation contained in paragraphs 1-174 above as if fully set forth herein.

176.    On information and belief, Acer contends that the claims of the '304 Patent are essential to the 4G LTE-A standard.

177.    On information and belief, Acer contends that the claims of the '304 Patent are essential to the 5G standard.

178.    Nokia makes and sells base station equipment which supports the 4G LTE-A and 5G standards.

179.    On information and belief, Acer believes Nokia 4G LTE-A and 5G base station equipment is covered by the '304 Patent.

180.    On information and belief, Nokia and Nokia base station equipment do not infringe any claim of the '304 Patent. For example, Nokia and its base station equipment do not practice at least the step of "mapping a plurality of reference signal patterns same as a plurality of orthogonal cover code (OCC) reference signal patterns multiplied with the associated demodulation reference signal to the PRBs according to an OCC mapping rule, wherein the OCC reference signal pattern applies length-2 or length-4 Walsh code OCC mapping according to antenna port and the direction of length-2 or length-4 Walsh code OCC sequences are mapped forward, reverse and forward on 14 OFDM symbols in time domain and 12 subcarriers in frequency domain" recited in claim 1 or "mapping a plurality of reference signal patterns same as a plurality of OCC reference signal patterns multiplied with the associated DM RS signal to the PRBs according to an OCC mapping rule, wherein the reference signal pattern is the demodulation reference signals on 7 OFDM symbols in time domain and 12 subcarriers in frequency domain multiplied by length-2 or length-4 Walsh code OCC mapping according to antenna port and the direction of length-2 or length-4 Walsh code OCC sequences are mapped reverse, forward and reverse on 14 OFDM symbols in time domain and 12 subcarriers in frequency domain" recited in claim 19.

181.    There is an actual, substantial, and immediate controversy between Nokia and Acer to warrant the issuance of a declaratory judgment.

182.    The interests of the parties will be best served if this Court enters a Declaratory Judgment setting forth the rights of the parties with respect to this dispute.

183.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of any interested party.

184.    Nokia is entitled to a Judicial Declaration and Order that Nokia and its base station equipment have not infringed and do not infringe, either directly or indirectly, literally or under the doctrine of equivalents, any claim of the '304 Patent.

185.    The relief sought by Nokia will resolve the controversy relative to Acer's Patents-at-Issue as to the respective interests of Nokia and Acer.

## COUNT IX: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '615 PATENT

186.    Nokia repeats and alleges each and every allegation contained in paragraphs 1-185 above as if fully set forth herein.

187.    On information and belief, Acer contends that the claims of the '615 Patent are essential to the 4G LTE-A standard.

188.    On information and belief, Acer contends that the claims of the '615 Patent are essential to the 5G standard.

189.    Nokia makes and sells base station equipment which supports the 4G LTE-A and 5G standards.

190.    On information and belief, Acer believes Nokia 4G LTE-A and 5G base station equipment is covered by the '615 Patent.

191.    On information and belief, Nokia and Nokia base station equipment do not infringe any claim of the '615 Patent. For example, Nokia and its base station equipment do not practice and are not capable of practicing at least the step of "a bit-adding means coupled to the receiving means, wherein the bit-adding means processing the received information bit sequence input prior

31

to any subsequent processing of the received information bit sequence input in the inter-sequence permutation encode" recited in claims 1 and 23.

192.    There is an actual, substantial, and immediate controversy between Nokia and Acer to warrant the issuance of a declaratory judgment.

193.    The interests of the parties will be best served if this Court enters a Declaratory Judgment setting forth the rights of the parties with respect to this dispute.

194.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of any interested party.

195.    Nokia is entitled to a Judicial Declaration and Order that Nokia and its base station equipment have not infringed and do not infringe, either directly or indirectly, literally or under the doctrine of equivalents, any claim of the '615 Patent.

196.    The relief sought by Nokia will resolve the controversy relative to Acer's Patents-at-Issue as to the respective interests of Nokia and Acer.

## COUNT X: DECLARATORY JUDGMENT THAT ACER HAS BREACHED ITS OBLIGATION TO NEGOTIATE IN GOOD FAITH

197.    Nokia repeats and alleges each and every allegation contained in paragraphs 1-196 above as if fully set forth herein.

198.    A case or controversy exists between Acer and Nokia concerning whether Acer has breached its obligation to negotiate in good faith with Nokia, for the reasons described above. There is a case or controversy of sufficient immediacy, reality, and ripeness to warrant the issuance of a declaratory judgment.

199.    Acer has failed to negotiate with Nokia in good faith, as described above. For example, since 2018, Nokia has been negotiating with Acer in a good faith effort to license certain of Nokia's patents. Nokia has also requested a cross license to Acer's patents. Acer did not

meaningfully engage with Nokia as to reasonable F/RAND terms, forcing Nokia to initiate litigation. In retaliation, Acer sent Threat Letters to Nokia's Customers, claiming that U.S. Patent No. 11,252,641; U.S. Patent No. 11,044,053; U.S. Patent No. 10,237,791; U.S. Patent No. 9,999,097; and U.S. Patent No. 8,737,333 were examples of infringement of "Acer's 4G LTE-A and 5G standard essential patents for base transceiver station equipment." The Threat Letters set a 21-day deadline for a response. The Threat Letters warned that "[f]ailure to respond to this letter will result in a claim of willful infringement based upon [their] knowing and intentional infringement of Acer's rights." The Threat Letters cautioned that, absent a license, "Acer will aggressively pursue all legal remedies and damages available under the law."

200.    Acer's Threat Letters assert that Acer's theory of infringement is predicated on products that Nokia sells to AT&T, T-Mobile, and Verizon. And Acer's subsequent discussions in a meeting with Nokia and at least one of Nokia's Customers made clear that Acer's threats focused on Nokia base station equipment, as evidenced by the fact that Acer presented a royalty model based on Nokia's sales revenue for its base station equipment and based its infringement allegations on its view that the charted patents contained claims that are essential to practice the applicable 4G and 5G standards.

201.    French law governs the ETSI FRAND commitment, and under French law, Acer is obligated to negotiate, in good faith. Acer breached this obligation.

202.    As a result of Acer's breach, Nokia has been injured in its business or property, including Nokia's costs and expenses in pursuing futile discussions with Acer, as well as attorneys' fees incurred by Nokia, in an amount to be determined at trial. Nokia is thus entitled to damages and/or equitable relief for Acer's failure to negotiate in good faith.

203.    There is an actual, substantial, and immediate controversy between Nokia and Acer warranting the issuance of a declaratory judgment.

204.    The interests of the parties will be best served if this Court enters a Declaratory Judgment setting forth the rights of the parties with respect to this dispute.

205.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of any interested party.

206.    Nokia is entitled to a Judicial Declaration and Order that Acer has breached its duty and failed to negotiate in good faith.

## COUNT XI: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '048 PATENT

207.    Plaintiffs repeat and allege each and every allegation contained in paragraphs 1-206 above as if fully set forth herein.

208.    On information and belief, Acer contends that the claims of the '048 Patent are essential to the 5G standard.

209.    Plaintiffs make, sell, and/or operate equipment and/or services which support the 5G standard.

210.    On information and belief, Acer believes Nokia 4G LTE-A and 5G base station equipment is covered by the '048 Patent.

211.    On information and belief, Acer believes AT&T's Accused Instrumentalities are covered by the '048 Patent.

212.    On information and belief, Acer believes T-Mobile's Accused Instrumentalities are covered by the '048 Patent.

213.    On information and belief, Acer believes Nokia 4G LTE-A and 5G base station equipment in Verizon's Accused Instrumentalities is covered by the '048 Patent.

214.    On information and belief, Nokia and Nokia base station equipment do not infringe any claim of the '048 Patent. Moreover, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities do not infringe any claim of the '048 Patent. For example, Nokia base station equipment, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities do not practice and are not capable of practicing at least the step of "configuring one measurement gap configuration to the mobile device with a first gap offset for at least a first component carrier of the plurality of component carriers and with a second gap offset for at least a second component carrier of the plurality of component carriers, wherein each of the first and second gap offsets indicates a value for shifting a measurement gap in one of the at least a first and second component carriers of the plurality of component carriers" recited in claim 1.

215.    As another example, Nokia base station equipment, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities do not practice and are not capable of practicing at least the step of "whereby the mobile device configured with the one measurement gap configuration performs measurement by the at least a first component carrier according to the first gap offset at different time from the mobile device performs measurement by the at least a second component carrier according to the second gap offset" recited in claim 1.

216.    There is an actual, substantial, and immediate controversy between Plaintiffs and Acer to warrant the issuance of a declaratory judgment.

217.    The interests of the parties will be best served if this Court enters a Declaratory Judgment setting forth the rights of the parties with respect to this dispute.

218.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of any interested party.

219.    Plaintiffs are entitled to a Judicial Declaration and Order that Nokia and its base station equipment, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities have not infringed and do not infringe, either directly or indirectly, literally or under the doctrine of equivalents, any claim of the '048 Patent.

220.    The relief sought by Plaintiffs will resolve the controversy relative to Acer's Asserted Patents as to the respective interests of Plaintiffs and Acer.

## ATTORNEYS' FEES

221.    Plaintiffs are entitled to recover reasonable and necessary attorneys' fees under applicable law.

## DEMAND FOR JURY TRIAL

222.    Plaintiffs hereby demand a jury trial for all issues so triable.

## PRAYER FOR RELIEF

223.    WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in its favor as follows and afford Plaintiffs the following relief:

    I.    declare that Nokia and its base station equipment, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities have not infringed and do not infringe any claim of the '641 Patent;

    II.    declare that Nokia and its base station equipment, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station

equipment in Verizon's Accused Instrumentalities have not infringed and do not infringe any claim of the '053 Patent;

III.    declare that Nokia and its base station equipment, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities have not infringed and do not infringe any claim of the '791 Patent;

IV.    declare that Nokia and its base station equipment, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities have not infringed and do not infringe any claim of the '097 Patent;

V.    declare that Nokia and its base station equipment, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities have not infringed and do not infringe any claim of the '333 Patent;

VI.    declare that Nokia and its base station equipment have not infringed and do not infringe any claim of the '746 Patent;

VII.    declare that Nokia and its base station equipment have not infringed and do not infringe any claim of the '663 Patent;

VIII.    declare that Nokia and its base station equipment have not infringed and do not infringe any claim of the '304 Patent;

IX.    declare that Nokia and its base station equipment have not infringed and do not infringe any claim of the '615 Patent;

X.    declare that Nokia and its base station equipment, AT&T's Accused Instrumentalities, T-Mobile's Accused Instrumentalities, and Nokia base station equipment in Verizon's Accused Instrumentalities have not infringed and do not infringe any claim of the '048 Patent;

XI.    declare that Acer has breached its duty to negotiate with Nokia in good faith;

XII.    award damages or equitable relief to Nokia for Acer's failure to negotiate in good faith;

XIII.    award attorneys' fees to Plaintiffs pursuant to 35 U.S.C. § 285 or as otherwise permitted by law;

XIV.    make an award of such other and further relief as this Court may deem just, equitable, and proper.

Dated: February 4, 2026                    Respectfully submitted,

                                           **FARNAN LLP**

                                           */s/ Brian E. Farnan*
                                           Brian E. Farnan (Bar No. 4089)
                                           Michael J. Farnan (Bar No. 5165)
                                           919 North Market Street, 12th Floor
                                           Wilmington, Delaware 19801
                                           Telephone: (302) 777-0300
                                           bfarnan@farnanlaw.com
                                           mfarnan@farnanlaw.com

                                           ***Attorneys for Plaintiffs Nokia of America
                                           Corporation, T-Mobile USA, Inc., and
                                           Sprint, LLC f/k/a Sprint Corp.***

                                           **RICHARDS LAYTON & FINGER**

                                           */s/ Kelly E. Farnan*
                                           Kelly E. Farnan (Bar No. 4395)
                                           One Rodney Square

920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
farnan@rlf.com

***Attorney for Plaintiffs AT&T Services, Inc., AT&T Mobility LLC, AT&T Mobility II LLC, and Cellco Partnership d/b/a Verizon Wireless***

John D. Haynes (*pro hac vice*)
john.haynes@alston.com
Georgia State Bar No. 340599
David S. Frist (*pro hac vice*)
david.frist@alston.com
Georgia State Bar No. 205611
**ALSTON & BIRD LLP**
1201 West Peachtree Street, Suite 4900
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

Lindsay C. Church (*pro hac vice*)
lindsay.church@alston.com
Missouri State Bar No. 77758
**ALSTON & BIRD LLP**
227 West Monroe Street, Suite 3900
Chicago, Illinois 60606
Telephone: (312) 702-8700

***Attorneys for Plaintiffs Nokia of America Corporation, AT&T Services, Inc., AT&T Mobility LLC, AT&T Mobility II LLC, T-Mobile USA, Inc., Sprint, LLC f/k/a Sprint Corp., and Cellco Partnership d/b/a Verizon Wireless***