IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NOKIA OF AMERICA CORPORATION, AT&T SERVICES, INC., AT&T MOBILITY LLC, AT&T MOBILITY II LLC, T-MOBILE USA, INC., SPRINT, LLC F/K/A SPRINT CORP., AND CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, | ) ) ) ) ) ) ) ) | |
| | ) | Case No. 25-1106 (MN) |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ACER INC., | ) ) | |
| Defendant. | ) | |

### <u>MEMORANDUM OPINION</u>

Kelly E. Farnan, RICHARDS LAYTON & FINGER, Wilmington, DE; Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE; John D. Haynes, David S. Frist, Stephen McNiff, Lindsay C. Church, Carter Babaz, ALSTON & BIRD LLP, Atlanta, GA; Erin Beaton, ALSTON & BIRD LLP, Charlotte, NC; Jason Spotts, ALSTON & BIRD LLP, Dallas, TX – Attorneys for Plaintiffs

Karen E. Keller, Andrew E. Russell, Emily S. DiBenedetto, Virginia K. Lynch, SHAW KELLER LLP, Wilmington, DE; Kai Tseng, Craig Kaufman, Jerry Chen, TECHKNOWLEDGE LAW GROUP LLP, Cupertino, CA; WARREN MCCARTY, AHMAD ZAVITSANOS & MENSING PLLC, Dallas, TX; Jason S. McManis, Weining Bai, Hailey Pulman, Savannah Ezelle, AHMAD ZAVITSANOS & MENSING PLLC, Houston, TX – Attorneys for Defendant

July 20, 2026
Wilmington, Delaware



**NOREIKA, U.S. DISTRICT JUDGE**

The Patent Office operates on a first-to-file rule: generally speaking, the party that files their application first gets priority. Patent litigation is similar: generally speaking, the first-filed lawsuit gets priority. This is a case where the Defendant asks the Court to upend that general rule. The Court will deny the invitation. The Court will also deny Defendant's request in the alternative to transfer this case under § 1404(a). (D.I. 27). Finally, the Court will deny Plaintiff Nokia's motion to preclude Acer from pursuing its second-filed suit. (D.I. 30).

## I.     BACKGROUND

### A.     The Parties

Plaintiff Nokia of America Corporation ("Nokia") is a Delaware corporation with its principal place of business in Murray Hill, New Jersey. (D.I. 16 ¶ 6). As relevant here, Nokia sells infrastructure used in wireless networks, called base stations, to wireless providers. (*Id.* ¶ 15). Some of those wireless providers are co-plaintiffs. AT&T Services, Inc. is a Delaware corporation with its principal place of business in Dallas, Texas; AT&T Mobility LLC is a Delaware LLC with its principal place of business in Atlanta, Georgia; and AT&T Mobility II LLC is a Delaware LLC with its principal place of business in Atlanta, Georgia (collectively, "AT&T"). (*Id.* ¶¶ 7–9). T-Mobile USA, Inc. is a Delaware corporation with its principal place of business in Bellevue, Washington, and Sprint, LLC f/k/a Sprint Corp. is a Delaware LLC with its principal place of business in Bellevue, Washington (collectively, "T-Mobile"). (*Id.* ¶¶ 10–11). Cellco Partnership d/b/a Verizon Wireless ("Verizon") is a Delaware corporation with its principal place of business in Basking Ridge, New Jersey. (*Id.* ¶ 12).

Defendant Acer Inc. is a Taiwanese corporation with its principal place of business in New Taipei City, Taiwan. (*Id.* ¶ 13; D.I. 21 ¶ 13).

1

B.      **History Relevant to This Motion**

Two important dates for this case are September 3, 2025 and January 9, 2026.  The former is when Nokia filed this lawsuit and the latter is when Acer filed three cases in the Eastern District of Texas that substantially overlap with this case.

But the history between Nokia and Acer goes back further.  Nokia and Acer have been trying to negotiate a license to Nokia's video codec standard essential patents ("SEPs") for years to no avail.  (*See* D.I. 21 ¶¶ 26–27 (Acer admitting parties have had multiple meetings since 2018 and have discussed a cross-license)).  Each side accuses the other of being unfair and unreasonable in negotiations, but regardless of where the blame lies, Nokia filed suit on its video codec SEPs in the Western District of Texas on April 7, 2025.  *See Nokia Techs. Oy v. Acer Inc.*, Case No. 25-523 (ADA) (W.D. Tex. Apr. 7, 2025).[1]

On July 10, 2025, Acer sent Nokia customers AT&T, Verizon, and T-Mobile (collectively, "the Wireless Carriers") demand letters accusing their "base transceiver station equipment" of infringing Acer's SEPs.  (D.I. 21 ¶ 33; D.I. 44, Ex. 7 (Acer's letters to the Wireless Carriers)).  Those letters identified five Acer-owned patents that the Wireless Carriers allegedly infringe: U.S. Patent Nos. 11,252,641; 11,044,053; 10,237,791; 9,999,097; and 8,737,333 (collectively, "the Demand Letter Patents").  Acer's letters to the Wireless Carriers set a 21-day response window and stated that "Acer will aggressively pursue all legal remedies and damages available under the law" if the Wireless Carriers did not license Acer's patents.  (*See e.g.*, D.I. 44, Ex. 7 at 3; *see also* D.I. 16 ¶ 37; D.I. 21 ¶ 37).  Acer's demand letters also stated that failure to respond to its demand

---

[1]     The Western District of Texas case has been stayed pending an ITC investigation.  *See Nokia Techs. Oy*, Case No. 25-523 (ADA), D.I. 14 (June 13, 2025 W.D. Tex.).

letter "will result in a claim of willful infringement based upon [the Wireless Carriers'] knowing and intentional infringement of Acer's rights." (*See e.g.*, D.I. 44, Ex. 7 at 3).

Nokia "makes base transceiver station equipment and sells it to Nokia's Customers, including AT&T, T-Mobile and Verizon." (D.I. 21 ¶ 34). So by accusing the Wireless Carriers' base stations of infringement, Acer effectively accused Nokia of selling infringing products. The Wireless Carriers notified Nokia of Acer's demand letters "pursuant to contractual indemnification provisions." (D.I. 16 ¶ 38).[2] Subsequently, Nokia joined a meeting between Acer and one of the Wireless Carriers during which Nokia alleges that Acer presented claim charts mapping Acer's infringement theory for the Wireless Carriers' base station equipment. (*Id.* ¶ 39).

On September 3, 2025, Nokia filed this action seeking a declaratory judgment that its products do not infringe the Demand Letter Patents (along with four other Acer-owned patents not identified in Acer's demand letters) and that Acer breached its obligation to negotiate in good faith. (D.I. 1 ¶¶ 65–181). The next day, Nokia emailed Acer a copy of the complaint it filed in Delaware and stated that "Nokia regrets that Acer's recent conduct with respect to Nokia and Nokia's customers brought us to this point. We remain hopeful that Acer will start negotiating in good faith so that we can reach an amicable solution." (D.I. 29, Ex. 4). Acer requested, and Nokia agreed to, a 90-day extension to answer the complaint. (D.I. 39, Ex. A). On January 13, 2026, Acer answered and asserted counterclaims of infringement, which rely on the 4G LTE-A and 5G standards for evidence of infringement. (D.I. 11 and accompanying exhibits).

On January 9, 2026, four days before Acer answered the original complaint in Delaware, Acer filed suit against the Wireless Carriers in the Eastern District of Texas, accusing the Wireless

---

[2]   Acer denied this allegation in Plaintiffs' amended complaint because it did not have "knowledge or information sufficient" to confirm or refute it. (D.I. 21 ¶ 38). For purposes of this motion, however, the Court takes Plaintiffs' representation as true.

Carriers of infringing the Demand Letter Patents plus one new patent, U.S. Pat. No. 9,526,048.[3] That lawsuit was filed more than four months after this lawsuit.

On February 4, 2026, Nokia amended its Delaware declaratory judgment complaint to add the '048 Patent, and the Wireless Carriers joined as co-plaintiffs. (D.I. 16). Acer answered the amended complaint on February 18, 2026, again asserting counterclaims of infringement, which mirrored its prior counterclaims. (D.I. 21). The day before that, Ericsson (a different base station provider) filed a declaratory judgment action in Delaware on the same patents at issue in the Nokia case. *Ericsson v. Acer*, Case No. 26-176 (MN) (D. Del. February 17, 2026).

## II.    THE FIRST-TO-FILE RULE AND WHETHER THIS CASE IS ANTICIPATORY

Acer moves to "dismiss th[is] case as an improper, anticipatory declaratory judgment [action]." (D.I. 29 at 8). For the same reasons, Acer asks this Court to depart from the first-to-file rule. (*Id.*). But before addressing that argument, the Court needs to address the threshold issue of whether Plaintiffs' amended complaint relates back to the original complaint. That matters because if the amended complaint relates back, it is treated as if it was filed on the same day as the original complaint for purposes of the first-to-file rule. Put differently, if the amended complaint relates back, it is treated as if it were filed on September 3, 2025, almost four months before Acer filed its lawsuits in the Eastern District of Texas.

---

[3]    These cases are: *Acer, Inc. v. AT&T, Inc. et al.*, Case No. 2:26-cv-00025 (E.D. Tex.) (filed Jan. 9, 2026); *Acer, Inc. v. T-Mobile USA, Inc. et al.*, Case No. 2:26-cv-00026 (E.D. Tex.) (filed Jan. 9, 2026); *Acer, Inc. v. Cellco Partnership d/b/a Verizon Wireless et al.*, Case No. 2:26-cv-00027 (E.D. Tex.) (filed Jan. 9, 2026).

A.    **Whether the Amended Complaint Relates Back**

"An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "The Supreme Court has interpreted the relation back doctrine liberally." *Anza Tech., Inc. v. Mushkin, Inc.*, 934 F.3d 1359, 1368 (Fed. Cir. 2019) (citing *Tiller v. Atl. Coast Line R.R. Co.*, 323 U.S. 574, 580–81 (1945)). Generally, to determine whether an amended complaint relates back, courts "consider the overlap of parties, the overlap in the accused products, the underlying science and technology, time periods, and any additional factors that might suggest a commonality or lack of commonality between the two sets of claims." *Anza Tech.*, 934 F.3d at 1369. But ultimately, the question is whether the "aggregate of operative facts underlying the original claim for relief gave notice to [the defendant] of the nature of the allegations it was being called upon to answer." *Id*. at 1369–70.

Here, the amended complaint relates back to the original complaint. The original and amended complaints were prompted by the same conduct, namely, Acer's July 2025 letters to the Wireless Carriers.[4] (D.I. 1 ¶¶ 3, 10, 22–32; D.I. 16 ¶¶ 3, 18, 30–40); Fed. R. Civ. P. 15(c)(1)(B). Both pleadings center on the same question, which is whether Acer's patents are in fact essential to the 4G LTE-A and 5G standards. Acer may disagree, but the question of essentiality is built into every single count of the original complaint because Nokia pleads both that its base stations are 4G LTE-A and 5G compliant (D.I. 1 ¶¶ 68, 80, 94, 105, 118, 129, 142, 153, 164) and that those same standard-compliant base stations do not infringe Acer's patents. (D.I. 1 ¶ 75, 89, 100, 113,

---

[4]    Those letters stated that Acer believed the Wireless Carriers' standard-compliant "base transceiver station equipment" infringed patents Acer declared essential to the "4G LTE-A and 5G" standards. (*See, e.g.*, D.I. 44, Ex. 7 at 1–2 (Acer Letter to AT&T Mobility LLC)).

124, 137, 148, 159, 170, Counts I-IX).  Because "'[standard-]compliant devices *necessarily* infringe' claims that 'cover technology incorporated into the standard,'" by pleading that its standard-compliant devices do not infringe Acer's patents, Nokia effectively accused Acer's patents of not being standard essential.  *Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1369 (Fed. Cir. 2025) (quoting *Ericsson, Inc. v. D-Link Sys.*, Inc., 773 F.3d 1201, 1209 (Fed. Cir. 2014) (emphasis in original)); *see also Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010) ("An accused infringer is free to either prove that the claims do not cover all implementations of the standard or to prove that it does not practice the standard.").  Adding the Wireless Carriers as plaintiffs and an additional patent did not change these core allegations.  The amended complaint recites the same two allegations across every count (standard-compliance and non-infringement), which means that just like the original complaint, essentiality remains the core question in the amended complaint.  (D.I. 16 ¶¶ 78, 88, 93, 105, 110, 119, 124, 135, 140, 149, 154, 162, 167, 173, 178, 184, 189, 195, 209, 219, Counts I–IX, XI).  Acer seemed to understand that the core issues in the original and amended complaints centered on essentiality.  After all, Acer's original infringement counterclaims rely on only the 4G LTE-A and 5G standards as evidence of infringement, and its amended infringement counterclaims are substantively identical to its original counterclaims.  (*See* D.I. 39, Ex. B).  Finally, the claim for declaratory judgment that Acer breached its obligation to negotiate in good faith is the same in both complaints.  (*Compare* D.I. 1 ¶¶ 172–181 *with* D.I. 16 ¶¶ 197–206).  Thus, the amended complaint relates back and benefits from the earlier-filed complaint's filing date.

### B.   <u>Whether This Suit Was Anticipatory</u>

Now the broader dispute, which boils down to whether this is an "anticipatory" declaratory judgment action.  The Declaratory Judgment Act provides that:

> In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). Under that statute, when a potential infringer and a patentee have a "substantial controversy [] of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," the potential infringer may file a declaratory judgment action to get clarity on whether its products actually infringe. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 901 (Fed. Cir. 2008); *Goodyear Tire & Rubber Co. v. Releasomers, Inc.,* 824 F.2d 953, 956 (Fed. Cir. 1987) ("[T]he purpose of the Declaratory Judgment Act . . . in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights."). "When there is an actual controversy and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity, in the usual circumstance the declaratory judgment is not subject to dismissal." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1383 (Fed. Cir. 2007) (quoting *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993)). District courts do, however, have discretion to decline to hear declaratory judgment actions. *See Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1366 (Fed. Cir. 2020) (affirming dismissal of declaratory judgment as anticipatory).

In situations like this "where the issue is whether a suit for declaration of patent rights should yield to a later-filed infringement suit, the trial court's discretion is guided by the first-to-file rule." *Commc'ns Test Design*, 952 F.3d at 1362. Under the first-to-file rule, "the first-filed action is preferred, even if it is declaratory." *Id*.; *see Micron Tech.*, 518 F.3d at 904 ("The general rule favors the forum of the first-filed action, whether or not it is a declaratory judgment action.").

But, like many rules, there are exceptions. *Commc'ns Test Design*, 952 F.3d at 1362 (stating that first-to-file rule "exceptions are not rare"); *Micron Tech.*, 518 F.3d at 904 (same). The one that matters here is the anticipatory-suit exception. Under that exception, a later-filed infringement action gets priority when the first-filed action is "anticipatory." *Commc'ns Test Design*, 952 F.3d at 1363, 1366 (affirming dismissal of anticipatory first-filed declaratory judgment action); *In re Amperex Tech. Ltd.*, 2022 WL 135431, at *2 (Fed. Cir. Jan. 14, 2022) (affirming transfer of anticipatory first-filed declaratory judgment action). A suit is anticipatory if "the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent." *Woodbolt Distribution, LLC v. Nat. Alternatives Int'l, Inc.*, Case No. 11-1266 (GMS), 2013 WL 247041, at *4 (D. Del. Jan. 23, 2013) (quoting *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, Case No. 12-462 (GMS), 2012 WL 3777423, at *3 (D. Del. Aug. 30, 2012)).

Here, Acer does not meaningfully dispute that there was an actual controversy when this suit was originally filed. And that makes sense because Nokia filed this case after its customers, customers it must indemnify (D.I. 1 ¶ 30; D.I. 16 ¶ 38), received a letter from Acer that accused their standard-compliant base station transceiver equipment of infringing Acer's SEPs and stated that Acer would "aggressively pursue all legal remedies and damages" if those customers did not license Acer's SEPs.[5] (*See generally* D.I. 44, Ex. 7 (Acer's demand letters)); *see Arris Grp., Inc. v. Brit. Telecommunications PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011) ("[W]here a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has standing to commence a declaratory judgment action if (a) the supplier is obligated to

---

[5]    Other facts also indicate that there was a substantial controversy between Acer and Nokia. Acer's demand letters to Nokia's customers came just months after Nokia asserted its own patents against Acer in W.D. Tex. (D.I. 16 ¶ 30). And after Acer sent the demand letters, Nokia attended meetings with its customers and Acer during which Acer presented claim charts mapping its patents to the 4G LTE-A and 5G standards. (*Id.* ¶ 39).

indemnify its customers from infringement liability . . . .").   Instead, Acer says this suit is anticipatory because Nokia's original complaint described Acer's demand letters as creating "an imminent threat of a patent infringement suit."  (D.I. 29 at 9 (citing D.I. 1 ₱ 3)).[6]  The issue with Acer's argument is that imminency in the anticipatory-suit-exception context requires "specific, concrete indications that a suit by the defendant was imminent." *Woodbolt Distribution LLC*, 2013 WL 247041, at *4; *see also Roku, Inc. v. AlmondNet, Inc.*, Case No. 21-1035 (MN), 2021 WL 5299247, at *4 (D. Del. Nov. 15, 2021) (same).

*Woodbolt*, a case Acer relies on (D.I. 29 at 7, 9; D.I. 44 at 5), provides a good example of what constitutes specific, concrete indications that a suit by the defendant was imminent.[7]  2013 WL 247041, at *4.  There, after negotiations between a patent owner and potential infringer did not yield a license, the patent owner sent the potential infringer "a 'cease and desist' letter [] and attached a draft complaint, which [the patent owner] warned would be filed in the Southern District of Texas on December 9, 2011."  *Woodbolt Distribution*, 2013 WL 247041, at *4.  When the potential infringer sued in Delaware before the patent owner could get their complaint filed in the Southern District of Texas, the Delaware court dismissed the first-filed action under the anticipatory suit exception.  *Id.* at *5.

Acer's demand letters here lack the concrete elements present in *Woodbolt*: Acer never attached a draft complaint, never identified where it would sue, and never set a deadline by which

---

[6]     In its answer, Acer denied Nokia's imminency allegations.  (D.I. 11 ₱ 3).

[7]     Acer also pointed the Court to *Time Warner Cable, Inc. v. GPNE*, 497 F. Supp. 2d 584 (D. Del. 2007).  (D.I. 29 at 10).  That case, however, is not on point because the declaratory judgment action there was second-filed.  *Time Warner Cable*, 497 F. Supp. 2d at 588 ("Chronologically, GPNE was the first-to-file.").

9

it would file suit.[8]  (D.I. 44, Ex. 7).  Instead, Acer's letter stated that it wanted to "bring to [the Wireless Carriers'] attention . . . patents within Acer's 4G LTE-A and 5G standard essential patent portfolio that [Acer] believe[s] are infringed by the [Wireless Carriers]." (*Id.*).  And although Acer requested a meeting "within no later than twenty-one (21) days of receipt" and stated that it would "aggressively pursue all legal remedies and damages available under the law," asking for a response in twenty-one days is not a specific threat to file litigation.  Similarly, a generalized statement that Acer would pursue "all legal remedies" at some unspecified time in the future in some unspecified forum likewise falls short of being a concrete, specific indication that a suit was imminent.[9]  Thus, the anticipatory suit exception does not apply here,[10] and the Court will not dismiss, transfer, or stay this Action under the Declaratory Judgment Act or the first-to-file rule.

### III.   MOTION TO TRANSFER

In the alternative, Acer asks to transfer this case to the Eastern District of Texas under 28 U.S.C. § 1404(a).  That statute permits district courts to transfer a case "to any other district or division where it might have been brought" "[f]or the convenience of parties and witnesses [and] in the interest of justice."  28 U.S.C. § 1404(a).

---

[8]   This should not be read to suggest that the elements in *Woodbolt* are necessary to show concrete indications that a lawsuit was imminent.  But the absence of even a single one of these elements indicates that Nokia's suit was not anticipatory.

[9]   Acer also alleges that Nokia "feigned cooperation" in negotiations, which warrants departing from the first-to-file rule. (D.I. 29 at 10–11).  But nothing in the record indicates Nokia feigned cooperation in negotiations, much less that Nokia feigned cooperation with the nefarious goal of depriving Acer of its preferred choice of forum.

[10]   Because the Court finds this case is first filed and is not anticipatory, the Court does not address Plaintiffs' additional argument that the customer suit exception favors Delaware.

10

In the Third Circuit, the § 1404(a) analysis turns on the private and public interest factors laid out in *Jumara v. State Farm Mut. Auto. Ins. Co.*, 55 F.3d 873 (3d Cir. 1995). The private interest factors are:

> [(1)] plaintiff's forum preference as manifested in the original choice; [(2)] the defendant's preference; [(3)] whether the claim arose elsewhere; [(4)] the convenience of the parties as indicated by their relative physical and financial condition; [(5)] the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [(6)] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* at 879. And the public interest factors are:

> [(7)] the enforceability of the judgment; [(8)] practical considerations that could make the trial easy, expeditious, or inexpensive; [(9)] the relative administrative difficulty in the two fora resulting from court congestion; [(10)] the local interest in deciding local controversies at home; [(11)] the public policies of the fora; and [(12)] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* A plaintiff's choice of forum "should not be lightly disturbed." *Id.* "The burden is on the moving party to establish that a balancing of proper interests weigh[s] in favor of the transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). And the moving party bears a substantial burden; it must prove that the *Jumara* factors "strongly" favor transfer. *Id.*

**A.      Appropriateness of the Proposed Transferee Venue:**

"The first step in the transfer analysis is to determine whether this action could have been brought in the proposed transferee venue," here, the Eastern District of Texas. *Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 437 (D. Del. 2015). Nobody disputes that this case could have been brought in the Eastern District of Texas, so the threshold inquiry is satisfied.

11

### B.    The *Jumara* Factors

#### 1.    Plaintiffs' Choice of Venue

"It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request." *Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761, 762–63 (D. Del. 1975); *see also Shutte*, 431 F.2d at 25 (same); *Samsara Inc. v. Motive Techs.*, Case No. 24-84 (MN), 2024 WL 3822981, at *4 (D. Del. Aug. 14, 2024) (same). "Assuming jurisdiction and proper venue, weight is given to plaintiff's choice because it is plaintiff's choice and a strong showing under the statutory criteria in favor of another forum is then required as a prerequisite to transfer." *Puff Corp. v. KandyPens, Inc.*, Case No. 20-976 (CFC), 2020 WL 6318708, at *3 (D. Del. Oct. 28, 2020) (citation omitted). Nokia and the Wireless Carriers are Delaware corporations that have elected to bring suit in Delaware. (D.I. 16 ¶¶ 6–12).[11] That choice is entitled to "paramount consideration," so this factor weighs strongly against transfer. *Shutte*, 431 F.2d at 25.

#### 2.    Defendant's Forum Preference

A Defendant's stated preference for the transferee forum generally makes this factor favor transfer. *See, e.g.*, *Intell. Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 480 (D. Del. 2011). But that is true only when the defendant can "articulate rational, legitimate reasons to support" its preference to litigate in the transferee district. *Papst*, 126 F. Supp. 3d at 438 (quoting *Pragmatus AV, LLC v. Yahoo! Inc.*, Case No. 11-902 (LPS) (CJB), 2012 WL

---

[11]    In its answer to the amended complaint in this case, Acer denied that any plaintiff is a Delaware corporation. (D.I. 21 ¶¶ 6–12). In the three complaints it filed in the Eastern District of Texas, however, Acer alleged that the Wireless Carriers are all Delaware corporations. (D.I. 29, Ex. 1 ¶¶ 7–9; *id.*, Ex. 2 ¶¶ 5, 7; *id.*, Ex. 3 ¶ 5).

4889438, at *1 (D. Del. Oct. 15, 2012), *report and recommendation adopted*, Case No. 11-902 (LPS) (CJB), 2013 WL 174499 (D. Del. Jan. 16, 2013)).

Here, Acer has articulated no rational or legitimate basis for its alleged preference for the Eastern District of Texas. For example, this is not a case where the proposed transferee district is near Taiwan-headquartered Acer's "principal or key place of business." (D.I. 21 ¶ 13 (Acer admitting it is a Taiwanese company)); *Papst*, 126 F. Supp. 3d at 439; *see also Samsara*, 2024 WL 3822981, at *4. And Acer's claim that it would be more convenient to litigate in the Eastern District of Texas rings hollow, particularly when it already asked a different Texas court to transfer a case between Acer and Nokia to the Northern District of California. *See Nokia Techs. Oy v. Acer Inc.*,, Case No. 25-523 (ADA), D.I. 12 at 8 (June 12, 2025 W.D. Tex.). Indeed, Acer has not identified any evidence indicating that it would be more convenient for Acer to litigate this case in the Eastern District of Texas; all it has is attorney argument.

Acer's claim that "it would be more efficient to have all of Acer's patent disputes tried in one forum" fares no better. (D.I. 29 at 13). This case had been pending for over four months when Acer chose to file three largely duplicative cases in the Eastern District of Texas. To the extent it would be more efficient to consolidate Acer's patent disputes in one forum, that forum would be the first-filed forum (Delaware). Acer cannot rely on the judicial inefficiency it injected into this dispute as a basis to transfer this case.

Despite that, the Court will allow that given Acer's preference, this factor slightly favors transfer.

### 3. Whether the Claims Arose Elsewhere

In patent cases involving companies that operate "on a national or global level, this factor is typically neutral." *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 730 (D. Del. 2012). This factor can, however, favor transfer if there are "significant connections between a

particular venue and the events that gave rise to a suit." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).  For example, if the accused products were designed, developed, and produced in the transferee forum, this factor can weigh in favor of transfer.  *See, e.g.*, *Samsara*, 2024 WL 3822981, at *4.

As the party moving to transfer, Acer bears the burden of showing a significant connection, and it has not.  All Acer points to is its assertion that "AT&T has at least one physical facility in the Eastern District of Texas that directly relates to its infringement of the Patents-In-Suit." (D.I. 29 at 14).  Acer provides no citation to the "one physical facility" it was referencing, (*Id.*), although, Acer presumably means the AT&T "Foundry" referenced later in its brief.  (*Id.* at 14–15).  Regardless, Acer has provided no evidence that AT&T's "Foundry" is relevant here.  All Acer points to is an allegation it made in a complaint, but that is "merely [an] allegation and not evidence."  (D.I. 29 at 15 (citing Ex. 1 (Acer's E.D. Tex. Complaint Against AT&T) ¶ 17)); *Williams v. Pennsylvania*, 289 F. App'x 483, 484 (3d Cir. 2008) ("Statements made in a complaint, however, are merely allegations and not evidence.").  This factor does not favor transfer.

### 4.    Convenience of the Parties

This factor looks to "(1) the parties' physical location; (2) the parties' logistical and operational costs of traveling to litigate in Delaware, as opposed to the proposed transferee district; and (3) the relative ability of each party to bear these costs in light of its size and financial standing." *Samsara*, 2024 WL 3822981, at *5.  Here, both parties are large companies that would not be prejudiced by litigating this case in Delaware.  Whether in the Eastern District of Texas or in Delaware, Acer's Taiwanese representatives and witnesses will have to get on a flight to attend trial and hearings, and Acer has provided no evidence that flights to Delaware are any more expensive or burdensome than flights to the Eastern District of Texas.  If anything, Nokia and Verizon's New Jersey principal place of business indicate that Delaware would be more

convenient for at least two litigants. (D.I. 16 ¶¶ 6, 12). At bottom, all parties have the resources to litigate this case in either the Eastern District of Texas or Delaware.

Under this factor Acer also argues that it would be more convenient for the parties to litigate their dispute in the Eastern District of Texas because "precisely the same issues are simultaneously pending" in Delaware and the Eastern District of Texas.[12] (D.I. 29 at 14 (quoting *In re Volkswagen of Am.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009))). But that overlap is a problem of Acer's own making. Again, this case was filed over four months before Acer filed the three E.D. Tex. cases, and Acer chose to assert five of the same patents that were already pending here in Delaware in those E.D. Tex. cases. Now, every single patent Acer is asserting in E.D. Tex. is before this Court (*see* D.I. 16 ¶¶ 51–74); however, the reverse is not true. The reality is that only this Court has all the at-issue patents before it, so only this Court can resolve the parties' dispute in one litigation.

This factor does not favor transfer.

### 5.  Convenience of the Witnesses

This factor matters "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. This factor focuses on third-party witnesses, and "[i]t is the defendant's burden to show both the unavailability of a particular witness and that witness' importance to the defendant's case." *Tessera, Inc. v. Sony Elecs. Inc.*, Case No. 10-838 (RMB) (KW), 2012 WL 1107706, at *6 (D. Del. Mar. 30, 2012). Acer has not identified any relevant witness (party or non-party) who would be available in one forum but not the other, so this factor does not favor transfer.

---

[12]   This argument, whether the transferee district has cases with overlapping subject matter, is typically addressed under the "Practical Considerations" prong *infra*. But because the parties addressed this issue here, the Court does too.

### 6.   Location of Books and Records

This factor matters only "to the extent that the [books and records] could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879.  Neither party has identified any documents that would be available in E.D. Tex. but unavailable in Delaware.  This factor does not favor transfer.

### 7.   Enforceability of the Judgment

This factor does not favor transfer "because '[t]here is no suggestion that a judgment would be unenforceable in either the District of Delaware or the [Eastern District of Texas].'" *Samsara*, 2024 WL 3822981, at *6 (quoting *Intell. Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 759 (D. Del. 2012)).

### 8.   Practical Considerations

Acer analyzed this factor under its "convenience of the parties" analysis.  (*See* D.I. 29 at 14).  So for the same reason, this factor does not favor transfer.

### 9.   Relative Administrative Difficulty Due to Court Congestion

This factor does not favor transfer because "[b]oth courts are among the busiest in the country." *Puff Corp.*, 2020 WL 6318708, at *5.

### 10.   Local Interest in Deciding Local Controversies at Home

Generally speaking, "patent issues do not give rise to a local controversy or implicate local interests." *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008).  Additionally, although Delaware may have some interest in having its corporate citizens litigate in Delaware, this case involves global corporations regarding products used nationwide.  *Smart Audio*, 910 F. Supp. 2d at 734.  So this factor does not favor transfer.

16

### 11.    Public Policies of the Fora

Plaintiffs are Delaware corporations and "Delaware's public policy encourages Delaware corporations to resolve their disputes in Delaware courts." *VLSI Tech. LLC v. Intel Corp.*, Case No. 18-966 (CFC), 2018 WL 5342650, at *9 (D. Del. Oct. 29, 2018).  Acer has not cited any countervailing Texas public policy, so this factor weighs against transfer.

### 12.    Familiarity of the Trial Judge with the Applicable State Law

This factor has limited (if any) applicability here because neither party asserts state law claims, and this is not a diversity case.  The issues here present questions of U.S. patent law and potentially of French law.   (*See* D.I. ¶¶ 201 ("French law governs the ETSI FRAND commitment . . . .")).  Both forums are equally familiar with the relevant law.  This factor does not favor transfer.

### C.    Weighing the Factors

Overall, two factors weigh against transfer, one slightly weighs in favor and the remaining ten factors are neutral/do not weigh in favor of transfer.  After weighing the relevant factors, Acer has not made the required strong showing that this case should be transferred to the Eastern District of Texas.

## IV.    NOKIA'S MOTION TO PRECLUDE DUPLICATIVE FILING

Nokia also moved to preclude Acer from pursuing its E.D. Tex. cases, arguing they are duplicative of Nokia's first-filed Delaware claims.  (D.I. 30, 31).  And although the Court agrees that Nokia's suit is first-filed, the Court will decline Nokia's invitation to enjoin Acer from pursuing its duplicative litigation.  The Eastern District of Texas and Delaware are no strangers to early-in-the-case forum disputes like this, and both courts generally transfer the second-filed case to the first-filed jurisdiction.  *See, e.g.*, *Sportradar US LLC v. Sportscastr, Inc., d/b/a Panda Interactive*, Case No. 24-170 (JCB), D.I. 23 (D. Del. Mar. 26, 2025) (transferring second-filed

17

Delaware action to E.D. Tex.); *Ramot at Tel Aviv Univ. Ltd. v. Cisco Sys., Inc.*, Case No. 22-168 (JRG), 2022 WL 17417972, at \*2 (E.D. Tex. Dec. 5, 2022) (transferring second-filed E.D. Tex. action to Delaware).  Moreover, at the April 30 hearing, the parties represented that there are pending transfer motions in the E.D. Tex. cases.  Thus, the Court finds Nokia's motion premature at this time and will deny it without prejudice.

## V.    CONCLUSION

For the foregoing reasons, Defendant's motion is DENIED.  So is Plaintiff Nokia's motion. An appropriate order will follow.

18